In re Lynette Dais MALONE, Debtor.

Lynette Dais Malone, Movant,

v.

Citibank NA as Trustee of SACO 1 Trust 2006–7 serviced by GMAC Mortgage, LLC, Respondent.

No. 12–61289–MGD.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

March 28, 2013.

Milton D. Jones, Milton D. Jones, Attorney, Morrow, GA, for Debtor.

### ORDER GRANTING DEBTOR'S MOTION TO DETERMINE SECURED STATUS OF CLAIM

MARY GRACE DIEHL, Bankruptcy Judge.

■ This case presents the legal question of whether section 506 of the Bankruptcy Code permits a chapter 7 debtor to "strip off" a junior mortgage lien where the value of the real property is less than the amount of debt securing the senior lien. This action is complicated by the recent unpublished decision entered by the Eleventh Circuit. *In re McNeal*, 477 Fed. Appx. 562 (11th Cir.2012). Irrespective of the unpublished nature of the *McNeal* opinion, this court gives great weight and deference to any ruling by the Eleventh Circuit. In the absence of the *McNeal* decision, this court would apply *Dewsnup*'s § 506(d) analysis to these facts. Yet, the three judge *per curium* panel in *McNeal* addressed this same issue and

came to a different conclusion. For the reasons explained below, Debtor's motion is **GRANTED**.

Jurisdiction over this action is set forth in 28 U.S.C. §§ 157(b) and 1334(b). The matter is a core proceeding under 28 U.S.C. § 157(b)(2)(K) and venue is proper.

### I. FACTS

Debtor first filed a chapter 13 bankruptcy petition and later converted to a chapter 7 case. The Motion to Determine Status of Wholly Unsecured Second Mortgage on Real Property ("Motion") was filed when Debtor's case was pending as a chapter 13, but the court heard this matter only after conversion to chapter 7. (Docket No. 14). Respondent ("Citibank") filed a response in opposition to the Motion (Docket No. 32), and a hearing was held on the matter. Milton D. Jones appeared on behalf of Debtor and Whitney Groff appeared for Citibank. The parties submitted post-hearing briefs,[1] and the matter was taken under advisement.

The parties agree on the relevant facts. Debtor owns real property, 6925 Beaver Trail, Riverdale, Georgia, which is subject to two security deeds. JPMorgan Chase Bank, NA purportedly holds or services the first priority security deed. The outstanding balance on its corresponding note is approximately $153,088.37. Citibank holds a valid second priority security deed on the Property and the balance on the corresponding note is approximately $32,197.36. The parties agree that the value of Property was $62,100.00.[2]

---

**1.** The court granted Clark & Washington, LLC's motion for leave to file *amicus curiae* brief regarding this matter (Docket Nos. 36 & 37). Clark & Washington, LLC submitted a brief in support of a debtor's ability to strip off a wholly unsecured junior lien, which was

reviewed and considered by the Court (Docket No. 40).

**2.** The stipulation as to the value of the Property was based on value at the time of the hearing on the Motion, September 20, 2012.

## II. LAW

Debtor's motion raises the question of whether section 506 of the Bankruptcy Code permits a chapter 7 debtor to "strip off," or completely void, a junior security deed where the value of the collateral does not extend to the subordinate lien. In a chapter 7 case, the analysis of this issue is limited to the operation of 11 U.S.C. § 506(a) and (d).

Section 506(a) determines the secured status of a claim and allows for an undersecured claim to be bifurcated. The relevant statutory language for this action is:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

11 U.S.C. § 506(a)(1). Debtor's "strip off" theory relies upon the interplay of § 506(a)(1)'s bifurcation tool with § 506(d). Section 506(d) provides: "To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void...." 11 U.S.C. § 506(d).[3]

Debtor's ability to use § 506(d) to void Citibank's lien is an issue of statutory interpretation. This is not a novel question of statutory interpretation; however, the parties disagree as to what caselaw is binding precedent on this court. The legal issue presented here is complicated by the recent unpublished decision entered by the Eleventh Circuit. *In re McNeal*, 477 Fed. Appx. 562 (11th Cir.2012) (per curium). The unpublished nature of *McNeal* is used by each party in support of its argument for opposite outcomes.

Eleventh Circuit Rule 36–2 provides that an unpublished decision does not serve as binding precedent for lower courts. Of course, the *McNeal* opinion operates as persuasive authority. Debtor urges the court to adopt *McNeal*'s rationale, which determined that the controlling law in this circuit permits a chapter 7 debtor to "strip off" a wholly unsecured lien by relying on the holding in *Folendore v. U.S. Small Business Administration*, 862 F.2d 1537 (11th Cir.1989). *McNeal*, 477 Fed.Appx. at 564–65. In contrast, Citibank asserts that *McNeal* is wrongly decided and that the intervening Supreme Court decision of *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) prohibits voiding its junior security deed. The court will first summarize *Dewsnup*, *McNeal*, and *Folendore* to best determine the applicable binding precedent.

### A. *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

The relevant facts in *Dewsnup* were that the debtor and creditors entered into a loan agreement, which was secured by a deed of trust on two parcels of the debtor's farmland. *Dewsnup v. Timm*, 502 U.S. at 412, 112 S.Ct. 773. The debtor defaulted and her chapter 7 bankruptcy[4] filing

---

**3.** There are two exceptions to § 506(d) that are not applicable here:

 ....—unless

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or (2) such claim is not an allowed secured claim due only to the failure of any entity to

file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(d)(1)-(2).

**4.** The debtor originally filed a chapter 11 petition, which was dismissed. A subsequent chapter 11 case was also dismissed before she

stayed the foreclosure. *Id.* at 412–13, 112 S.Ct. 773.

During the chapter 7 proceeding, the debtor initiated an adversary proceeding to "strip down"[5] the balance she owed on the loan to the present fair market value of the real property securing the loan. *Id.* The debtor claimed her property was "underwater"—that the $120,000 outstanding balance of the loan exceeded the fair market value of the farmland. *Id.* The debtor reasoned that a "strip down" was authorized "by the interrelationship of the security-reducing provision of § 506(a) and the lien-voiding provision of § 506(d)." *Id.*

The bankruptcy court, the district court, and the Tenth Circuit all disagreed and refused to allow the debtor to "strip down" the claim under the terms of the Bankruptcy Code. *Id.* at 413–14, 112 S.Ct. 773. The bankruptcy court reasoned that § 506 did not apply to the facts at hand because the trustee abandoned the farmland pursuant to § 554, thereby rendering § 506 inapplicable because the property was no longer "property in which the estate has an interest." 11 U.S.C. § 506(a); *Id.* (quoting *In re Dewsnup*, 87 B.R. 676 (Bankr.D.Utah 1988)).

The Supreme Court affirmed, but it adopted more expansive reasoning than the lower courts. *Id.* at 415–16, 112 S.Ct. 773. Its decision was not based on the trustee's abandonment of the farmland, but, instead on the statutory language and limits of § 506(d). The Court began its reasoning by stating that "§ 506 of the Bankruptcy Code and its relationship to other provisions of that Code embrace some ambiguities." *Id.* at 416, 112 S.Ct.

773. Given those ambiguities, the Court was "not convinced that Congress intended to depart from the pre-Code rule that liens pass through bankruptcy unaffected," which was the case under the Bankruptcy Act of 1898. *Id.* at 417–18, 112 S.Ct. 773. Before the Bankruptcy Code, a creditor's lien could not be reduced "for any reason other than payment on the debt." *Id.* at 419, 112 S.Ct. 773. Accordingly, "Congress must have enacted the Code with a full understanding of this practice" since Congress "does not write 'on a clean slate'" when it amends bankruptcy laws. *Id.* (quoting *Emil v. Hanley*, 318 U.S. 515, 521, 63 S.Ct. 687, 87 L.Ed. 954 (1943)).

The Supreme Court held that "§ 506(d) does not allow [the debtor] to 'strip down' respondents' lien [to the present fair market value of the real property], because respondents' claim is secured by a lien and has been fully allowed pursuant to § 502." *Id.* at 417, 112 S.Ct. 773. The Court determined that the meaning of "allowed secured claim" in § 506(d) was not an "indivisible term of art." *Id.* at 415, 112 S.Ct. 773. Instead, "allowed secured claim" refers to a claim that is both "allowed" and "secured," with each modifier requiring independent analysis. *Id.* at 415–16, 112 S.Ct. 773. The Supreme Court accordingly adopted a "term-by-term" two-step framework to decide what the phrase "allowed secured claim" meant in § 506(d): first whether the claim was "allowed" under § 502, and second whether the claim was "secured" through "a lien with recourse to the underlying collateral." *Id.* at 415, 112 S.Ct. 773.

---

filed the chapter 7 case. *Id.* at 413, 112 S.Ct. 773.

**5.** In bankruptcy terms, "strip down" means to reduce the debt amount securing a lien to the value of the collateral. A creditor's claim is described as undersecured in a "strip

down." "Strip off" means voiding a lien entirely. A creditor's claim is described as wholly unsecured in a "strip off." *E.g., In re Tanner*, 217 F.3d 1357, 1358 n. 4 (11th Cir. 2000).

First, the Court said it was obvious the claim was "allowed" under § 502. *Id.* For the second step the Court said the claim was "secured" because it was "secured by a lien with recourse to the underlying collateral." *Id.* Therefore the claim was not subject to § 506(d), which voids a lien "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim," because the claim was both "allowed" and "secured." *Id.*

The court read the lien-voiding powers of § 506(d) as having "the simple and sensible function of voiding a lien whenever a claim secured by the lien itself has not been allowed." *Id.* at 415–16, 112 S.Ct. 773. Because the claim was allowed and "secured by a lien with recourse to the underlying collateral," § 506(d) did not void it. *Id.* at 415–17, 112 S.Ct. 773. "[T]he creditor's lien stays with the real property until the foreclosure" because that is what was "bargained for," with any increase in the property's value accruing "to the benefit of the [secured] creditor." *Id.*

**B.** *In re McNeal,* **477 Fed. Appx. 563 (11th Cir. 2012).**

Recently, the Eleventh Circuit ruled in *McNeal,* that a chapter 7 debtor could void a "wholly unsecured" lien on real property. *In re McNeal,* 477 Fed.Appx. 562 (11th Cir.2012) (unpublished per curium decision). The *McNeal* court relied on *Folendore v. U.S. Small Business Administration,* 862 F.2d 1537, 1538 (11th Cir.1989), not *Dewsnup,* as "the present controlling precedent in the Eleventh Circuit" for voiding a wholly unsecured allowed claim under § 506(d). *Id.* at 564. The court reached this holding by applying the prior panel precedent rule which states "a later panel [of the same court] may depart from an earlier panel's decision only when the intervening Supreme Court decision is

'clearly on point.'" *Id.* (citing *Atl. Sounding Co., Inc. v. Townsend,* 496 F.3d 1282, 1284 (11th Cir.2007)). The court concluded *Dewsnup* was not "clearly on point" with the facts of *McNeal* because "Dewsnup disallowed only a 'strip down' ... and did not address a 'strip off.'" *Id. McNeal* also recognized that other circuit courts had determined that *Dewsnup* was applicable to "strip off" cases and that cases within the Eleventh Circuit "have treated *Folendore* as abrogated by *Dewsnup.*" *Id.*

The facts of *McNeal* are identical to the facts in this matter. In *McNeal,* the debtor's home was valued at $141,416 at the time of her chapter 7 petition. *Id.* at 563. But the debtor's home was subject to two mortgage liens: a senior lien for $176,413 and a subordinate lien for $44,444, thus leaving the home underwater on the senior lien. *Id.* The debtor sought to strip off the subordinate lien under § 506(a) and (d). *Id.* Both the bankruptcy court and the district court denied the debtor's motion and relying on *Dewsnup*'s two-step analysis for § 506(d). *Id.*

**C.** *Folendore v. U.S. Small Business Administration (In re Folendore),* **862 F.2d 1537 (11th Cir. 1989).**

The facts in *Folendore* align with the facts before this Court and those presented in *McNeal*—the debtor sought to void a "wholly unsecured" junior lien on real property. *Folendore v. U.S. Small Bus. Admin.,* 862 F.2d 1537 (11th Cir.1989). Two banks held perfected security interests in the debtors' real and personal property, and the amount of the liens exceeded the value of the property. *Id.* at 1538. Additionally, the Small Business Administration ("SBA") held a subordinate perfected security interest on the same property. *Id.* The property was already "underwater" as to the senior liens. Based on these facts, the parties stipulated that the SBA

"held an unsecured claim at the time of the filing of the debtors' petition." *Id.* The *Folendore* court also characterizes this stipulation as an agreement that "SBA does not have an allowed secured claim." *Id.* The debtors filed a motion to void the SBA lien under § 506. *Id.* Both the bankruptcy and district courts held that the SBA lien survived bankruptcy. *Id.*

The Eleventh Circuit reversed the lower courts' rulings "[u]nder the plain language of section 506(d)."[6] *Id.* at 1539. The court first accepted the stipulation that the SBA's lien was unsecured under the claim bifurcation provision of § 506(a). *Id.* But the court noted the SBA's claim was allowed because the creditor filed a proof of claim under § 501. *Id.* at n. 3.

The court then expressly adopted the "majority view of the bankruptcy courts . . . that section 506(d) may be used to void a lien . . . *even if the claim is not disallowed.*" *Id.* (emphasis in original). The court based its decision on "[t]he plain language of the statute, supported by the decisions of a majority of the bankruptcy courts, inferences drawn from the 1984 amendments, and common sense." *Id.* The court refused to consider any legislative history of § 506(d) because it "cannot ignore the statutory language." *Id.* at 1539–40 (citing *I.N.S. v. Cardoza Fonseca,* 480 U.S. 421, 452–53, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (Scalia, J., concurring)). The court said § 506(d) "on its face" "would leave a creditor like the SBA with nothing," which promotes "provid[ing] a debtor with a fresh start." *Id.* at 1540. The court warned that if the SBA's position was adopted, then the debtor would have incentive to abandon the property because "the SBA can attach any equity they manage to generate" on the property, endangering the Debtor's fresh start. *Id.*

## III. DISCUSSION

 The outcome of Debtor's motion is largely determined by the weight given to the unpublished *McNeal* decision. Despite the unpublished nature of the *McNeal* opinion, this court gives great weight and deference to any ruling by the Eleventh Circuit. In the absence of the *McNeal* decision, this court would apply *Dewsnup*'s § 506(d) analysis to these facts. Yet, the three judge *per curium* panel in *McNeal* addressed this same issue and came to a different conclusion.

*McNeal* gives substantial weight to the "strip off" versus "strip down" distinction. The availability of lien stripping under *McNeal*'s and *Folendore*'s § 506(d) analysis considers the value of the property to determine a claim's secured status. Here, the parties stipulate that Citibank's claim is wholly unsecured based on the value of the Property and the balance owing on the claim secured by the senior security deed. Therefore, under *McNeal*'s interpretation of § 506(d), Citibank's does not hold an "allowed secured claim" and, therefore, § 506(d) operates to void Citibank's lien.

### A. *Folendore's* Section 506(d)'s Application Differs from the *Dewnsup* Analysis.

The § 506(d) analysis under *Folendore* differs from what the Supreme Court directs in *Dewsnup.* *Dewsnup* instructs that § 506(d)'s phrase—"allowed secured claim"—requires a "term-by-term" analysis. The first question would be whether Citibank's claim is allowed. Here, Debtor does not contest the validity of Citibank's

---

**6.** Because the debtor's motion was filed in 1978, the court interpreted the pre–1984 Code in this case. However, § 506(d) was not materially different in this version of the Code in that it still voided any "allowed secured claim" subject to two exceptions not relied upon here.

claim, but as is typical in all "no-asset" chapter 7 cases,[7] Citibank did not file a proof of claim, nor was it so required. "The allowance of a secured claim, or determination of secured status is meaningless in a chapter 7 where the trustee is not disposing of the putative collateral." *In re Laskin*, 222 B.R. 872, 876 (9th Cir. BAP 1998).

It seems that under *Dewsnup*, Citibank's failure to file a proof of claim would not make its claim "not an allowed secured claim" for purposes of § 506(d). In *Dewsnup*, the Supreme Court recognized that § 506(d) serves the "function of voiding a lien whenever a claim secured by the lien itself has not been allowed." *Dewsnup*, 502 U.S. at 415–16, 112 S.Ct. 773. The Supreme Court pointed to § 502 as the relevant section to determine whether a claim is disallowed. *Dewsnup*, 502 U.S. at 417, 112 S.Ct. 773. "[W]e hold that § 506(d) does not allow [the debtor] to "strip down" respondents' lien, because respondents' claim is secured by a lien and has been fully allowed pursuant to § 502." *Id.* "Courts have concluded that based on the Supreme Court's analysis, § 506(d) does not provide a mechanism to "disallow" a claim." *In re Pomilio*, 425 B.R. 11, 16 (Bankr.E.D.N.Y.2010).

The next step in the *Dewsnup* analysis regarding the "secured" term of the phrase—"allowed secured claim"—is in stark contrast to the reasoning in *Folendore*. Under *Dewsnup*, Citibank's claim would be secured based on the presence of security deed, and Citibank's claim would be secured for purposes of § 506(d) because it is "secured by a lien with recourse to the underlying collateral."[8] *Dewsnup*,

502 U.S. at 415, 112 S.Ct. 773. In contrast, under *Folendore*, the value of the property and the balance on the claim secured by the senior security deed determines whether Citibank's claim is secured for purposes of § 506(d). The analysis of the secured nature of a claim under § 506(a) and (d) is identical under *Folendore*. Applying *Folendore*'s § 506(d) analysis results in Citibank's lien being wholly unsecured pursuant to § 506(a) because the amount of debt securing the senior lien exceeds the value of the Property and there is no value to which Citibank's lien can attach. *Folendore*, 862 F.2d at 1538.

Accordingly, under *Dewsnup*, Citibank would hold an "allowed secured claim" and 506(d)'s power to void a lien would be inapplicable. However, *McNeal* instructs that *Folendore* is controlling law in this circuit. Under *Folendore*, the secured nature of Citibank's claim would be dependent on the value of the Property and the extent to which the collateral secures Citibank's claim. Section 506(a) would determine whether and to what extent Citibank's claim is secured. Accordingly, the stipulated values of the Property and claim secured by the senior deed to secure debt allow Debtor to use § 506(a) and (d) and strip off Citibank's wholly unsecured junior lien on Property.

**B. The facts in *Dewnsup* involved a "partially secured" junior lien instead of a "wholly unsecured" junior lien, as presented in *McNeal* and *Folendore*.**

Debtor urges this court to adopt *McNeal* and use *Folendore* as the applica-

---

**7.** Edwin K. Palmer, chapter 7 Trustee for the estate of Lynette Dais Malone, filed a report of no distribution on September 13, 2012.

**8.** Here, Debtor does not dispute that Citibank holds an otherwise valid junior deed to secure

debt. Absent the automatic stay, Citibank could foreclose its security deed and become the owner of the Property subject to the first priority security deed.

ble precedent on this issue, drawing a distinction between the facts in *Dewsnup*, a strip down case, and *McNeal*, a strip off case. Although this factual distinction is unpersuasive to this court, *McNeal*'s ruling supports her position as to why this factual distinction should make a difference in the application of the Supreme Court's statutory interpretation of § 506(d).

### 1. Should the *Dewsnup* holding regarding section 506(d) be limited to "strip down" cases?

The Supreme Court's precise holding in *Dewsnup* was "we hold that § 506(d) does not allow [the debtor] to 'strip down' respondent's lien, because respondent's claim is secured by a lien and has been fully allowed pursuant to § 502." *Dewsnup*, 502 U.S. at 417, 112 S.Ct. 773. *Dewsnup*'s specific holding is regarding the operation of § 506(d). The operation of § 506(d) is the exact issue before this Court. Therefore, applying *Dewsnup*'s statutory interpretation of § 506(d) to prevent Debtor from voiding Citibank's lien seems appropriate and required.

Prevailing authority supports the application of *Dewsnup*'s § 506(d) analysis to "strip off" cases based on the rationale that the value of the subject property is not relevant given how *Dewsnup* determined whether a claim was "secured" for purposes of § 506(d). "Although the lien at issue in *Dewsnup* was secured by at least some equity in the debtor's property, that factual distinction is not relevant. What is relevant is the Supreme Court's construction of § 506(d)." *Wachovia Mortgage v. Smoot*, 478 B.R. 555, 565 (E.D.N.Y.2012) (citing *In re Cater*, 240 B.R. 420, 423 (M.D.Ala.1999)).

The Fourth Circuit explained its choice to apply *Dewsnup* to a strip off case in *Ryan v. Homecomings Financial Network*, 253 F.3d 778 (4th Cir.2001). "The

Court's reasoning in *Dewsnup* is equally relevant and convincing in a case like ours where a debtor attempts to strip off, rather than merely strip down, an approved but unsecured lien." *Id.* at 782. In applying *Dewsnup*, the Fourth Circuit stated there "was no principled distinction to be made" between a strip off and a strip down case. *Id.* Likewise, in the case of *In re Talbert*, 344 F.3d 555 (6th Cir.2003), the Sixth Circuit concluded that *Dewsnup* applied to a chapter 7 strip off case because "[t]he Supreme Court's reasoning for not permitting "strip downs" in the chapter 7 context applies with equal validity to a debtor's attempt to effectuate a chapter 7 "strip off." " *Id.* at 560 (quotations included in the original). The Bankruptcy Appellate Panel for the Ninth Circuit also directly addressed its decision to apply *Dewsnup* to a strip off case in *Laskin v. First National Bank of Keystone (In re Laskin)*, 222 B.R. 872 (9th Cir. BAP 1998). "Further, whether the lien is wholly unsecured or merely undersecured, the reasons articulated by the Supreme Court for its holding in *Dewsnup* ... are equally pertinent." *Id.* at 876.

Debtor argues that assessing the meaning of "allowed secured claim" in § 506(d) does not require using *Dewsnup*'s "term-by-term" instruction. Instead, Debtor asserts that under *McNeal* and *Folendore*, this court can determine whether Citibank has an "allowed secured claim" as it would under § 506(a). *Folendore* holds that § 506(a) allows the value of the underlying collateral to determine the secured nature of a claim, and, therefore, a wholly unsecured claim can similarly be voided by § 506(d) because the property's value does not give the creditor an "allowed secured claim." *Folendore*, 862 F.2d at 1538–39. *Folendore* predated *Dewsnup* and does not make a distinction between the terms allowed and secured for purposes of

§ 506(d), as *Dewsnup* requires. Further, *Folendore*'s decision included a stipulation that the junior lienholder did not hold an "allowed secured claim." *Id.* at 1538.

Although *Dewsnup* holds that § 506(d)'s statutory phrase of "allowed secured claim" requires an inquiry into each modifier—allowed and secured, *McNeal* rejected its application to facts identical to those in this action. Accordingly and in deference to the *McNeal* decision, Debtor maintains the ability to strip off Citibank's lien based on the stipulated value of the Property and Citibank's "wholly unsecured" claim. Because Citibank does not hold an "allowed secured claim" under Eleventh Circuit precedent, Citibank's lien is void pursuant to § 506(d).

**2. Does *Dewsnup* constitute an "on point" intervening Supreme Court ruling to permit the Eleventh Circuit to depart from *Folendore's* Section 506(d) holding?**

It seems the most substantial reason *McNeal* declined to adopt *Dewsnup*'s § 506(d) analysis was its reliance on the prior panel precedent rule. As explained by the *McNeal* court, "Under our prior panel precedent rule, a later panel may depart from an earlier panel's decision only when the intervening Supreme Court decision is 'clearly on point.'" *McNeal,* 477 Fed.Appx. at 564. *McNeal* determined that under the prior panel precedent rule *Dewsnup* was not applicable because it disallowed "only a 'strip down' of a partially secured mortgage lien and did not address a 'strip off' of a wholly unsecured lien." *Id.*

The *McNeal* court explained that the rationale of *Dewsnup* could logically be applied to *McNeal,* but rejected such an application because "the reasoning of an intervening high court decision [ ] at odds with that of our prior decision is no basis for a panel to depart from our prior decision." *Id.* The application of Supreme Court reasoning to the facts of *McNeal* would be "extrapolating from [*Dewsnup* 's] implications a holding on an issue that was not before the Court in order to upend settled circuit law" and would not be allowed under the prior panel precedent rule. *Id.*

Upon review and study of *McNeal,* it seems there are pronounced distinctions between the application of the prior panel precedent rule as used in the case relied upon by *McNeal, Atlantic Sounding Co., Inc. v. Townsend,*[9] and its application in *McNeal.*

In *Atlantic Sounding,* the Eleventh Circuit confronted an issue decided by a prior panel, *Hines v. J.A. LaPorte, Inc.,* 820 F.2d 1187 (11th Cir.1987), regarding whether an injured sailor could recover punitive damages under a common law cause of action.[10] *Atl. Sounding,* 496 F.3d at 1284; *Hines,* 820 F.2d at 1189. One party asserted that the intervening Supreme Court decision, *Miles v. Apex Marine Corp.,* 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), should control. *Miles,* 111 S.Ct. at 326. The legal issue in *Miles* was whether a non-sailor could recover loss of society damages for the wrongful death of a sailor in an action brought under the Jones Act, a federal statute.

---

**9.** *Atl. Sounding Co., Inc. v. Townsend,* 496 F.3d 1282 (11th Cir.2007) *aff'd and remanded,* 557 U.S. 404, 129 S.Ct. 2561, 174 L.Ed.2d 382 (2009).

**10.** The sailor included a Jones Act violation in his counterclaims, but his counterclaims also included a "maintenance and cure" common law claim in which he sought punitive damages. *Atl. Sounding,* 496 F.3d at 1284.

The court in *Atlantic Sounding* applied the prior panel precedent rule to determine that an intervening Supreme Court decision was not clearly on point. *Atl. Sounding*, 496 F.3d at 1285–86. The Eleventh Circuit found no reason to depart from its prior decision in *Hines*, when the intervening *Miles* case, dealt with a different cause of action requesting a different type of relief brought by a different type of plaintiff under different law.[11] In contrast, *Dewsnup* and *Folendore* involved the same type of plaintiff (a chapter 7 debtor) attempting to garner the same type of court relief (the valuation of a secured claim to equal the value of the collateral) under the same law (§ 506(a) and (d)).

The application of the prior panel precedent rule in *McNeal* is assessed with deference by this court. Yet, its application in an unpublished opinion where there is replete persuasive authority holding that *Dewsnup* is directly on point creates a predicament. As explained above, this court has struggled to reconcile *McNeal* and *Dewsnup* in deciding Debtor's motion. The legal analysis as set forth above and the principles underlying *Dewsnup* are compelling to this court.

Regarding the underlying principles, this court takes issue with *Folendore*'s characterization that stripping a lien using § 506(d)—when the value of the property is less than the senior lien—promotes the fresh start policy of bankruptcy. *Folendore*, 862 F.2d at 1540. In assessing this position, it is important to consider that chapter 7 provides relief for a debtor through liquidation, not reorganization.[12] In a chapter 7, a debtor's options for treating property are limited to redemption, reaffirmation, or surrender. *In re Taylor*, 3 F.3d 1512, 1516 (11th Cir.1993).[13]

■ A debtor's fresh start is attained by the issuance of a discharge. As we know from *Johnson v. Home State Bank*, a discharge extinguishes *only* "the personal liability of the debtor," and the mortgage lien remains. *Johnson v. Home State Bank*, 501 U.S. 78, 82–83, 111 S.Ct. 2150, 2153, 115 L.Ed.2d 66 (1991) (emphasis in original) (citing 11 U.S.C. § 524(a)(1)). The Supreme Court further explained that "the Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy." *Id.* Dewsnup acknowledges this same premise when explaining that a creditor's lien would stay with the property until foreclosure, even in bankruptcy, because "[t]hat is what was bargained for by the mortgagor and the mortgagee." *Dewsnup*, 502 U.S. at 417, 112 S.Ct. 773. Characterizing the fresh start policy of bankruptcy to include voiding otherwise valid security interests based upon the value of such prop-

---

**11.** "If *Miles* had held that punitive damages were not available for the willful failure to pay maintenance and cure, we certainly would follow that holding instead of our contrary one in *Hines*, even if the *Miles* opinion did not mention the *Hines* decision." *Id.* at 1287 (J. Carnes, concurring).

**12.** *See Nobelman v. Am. Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993); *In re Tanner*, 217 F.3d 1357, 1360 (11th Cir.2000) (interpreting § 1322(b) and addressing treatment of "undersecured" or

"wholly unsecured" mortgage liens in chapter 13 cases).

**13.** Although BAPCPA enacted changes to § 521(a)(2), "[t]he language interpreted by the Eleventh Circuit in the *Taylor* case was unchanged by BAPCPA." *In re Harris*, 421 B.R. 597, 600 (Bankr.S.D.Ga.2010). "[I]f a debtor retains secured property, then the options of redemption and reaffirmation are applicable and the debtor is required to redeem or reaffirm." *Taylor v. AGE Fed. Credit Union*, 3 F.3d at 1516.

erty contravenes the Supreme Court's elemental propositions in *Johnson v. Home State Bank, Dewsnup,* and *Butner v. United States.*[14]

## IV. CONCLUSION

The issues presented by the parties in this action are identical to those arguments presented to the *McNeal* court. Although this court can not reconcile the *Folendore* and *Dewsnup* decisions with respect to the scope and application of § 506(d), deference to the Eleventh Circuit's *McNeal* decision ultimately tips the balance in favor of Debtor. Accordingly, it is

**ORDERED** that Debtor's motion to determine secured status of claim is hereby **GRANTED.**

It is **FURTHER ORDERED** that:

1. The deed to secure debt on the Property held by Citibank is deemed void with respect to the interest of the Debtor in the Property and shall be extinguished automatically, without further court order, upon entry of the Chapter 7 discharge in this case.

2. In the event this case is dismissed, the lien of Citibank shall not be affected by this Order in accordance with 11 U.S.C. § 349(b)(1)(C).

3. In the event this case is converted to a case under another chapter of the Bankruptcy Code, the rights of Citibank with regard to its deed to secure debt shall be governed by the applicable provisions of the Bankruptcy Code and the deed to secure debt shall not be affected by this Order.

14. *Butner v. U.S.,* 440 U.S. 48, 54–55, 99 S.Ct.

The Clerk is directed to serve a copy of this Order on the parties listed below.

**IT IS ORDERED.**