NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0476-21

VADIM CHEPOVETSKY and
SVETLANA NASHTATIK,

      Plaintiffs-Respondents,

v.

LOUIS CIVELLO, JR.,

      Defendant-Appellant.

_____

**APPROVED FOR PUBLICATION**

**June 16, 2022**

**APPELLATE DIVISION**

Argued June 2, 2022 – Decided June 16, 2022

Before Judges Hoffman, Geiger and Susswein.

On appeal from an interlocutory order of the Superior Court of New Jersey, Chancery Division, Middlesex County, Docket No. C-000008-19.

Jeffrey S. Mandel argued the cause for appellant.

Kenneth L. Winters argued the cause for respondents (Jardim, Meisner & Susser, PC, attorneys; Kenneth L. Winters, on the briefs).

The opinion of the court was delivered by

GEIGER, J.A.D.

Defendant Louis Civello, Jr. appeals from a September 3, 2021 Chancery Division order vacating a June 24, 2021 judgment entered against plaintiffs Vadim Chepovetsky and Svetlana Nashtatik pursuant to Rule 4:50-1(d) and reinstating plaintiffs complaint to quiet title. We affirm in part, as modified, vacate in part, and remand.

The Loan Transaction, Mortgage, Guaranty, and Default

Civello owned Bayview Auto and Truck, Inc. (Bayview), an automobile dealership in South Amboy. In January 2007, Civello agreed to sell Bayview and its inventory of nineteen vehicles to Artem Boguslavskiy for $196,500. Under their arrangement, Boguslavskiy would operate Bayview immediately, pending approval of the transaction by the New Jersey Motor Vehicle Commission (MVC), at which time the transaction would close. If Boguslavskiy failed to obtain the requisite approval from the MVC, the agreement would be rescinded. Boguslavskiy was required to provide an accounting of all vehicle sales and turn over the proceeds from the sale of the inventory to Civello.

Boguslavskiy paid Civello $12,500 upon execution of the agreement and gave defendant a promissory note for $184,000, with interest thereon at 2.5 percent, payable in sixty equal monthly installments followed by a balloon

payment due on February 22, 2012. The note also provided for late charges and counsel fees in the event of nonpayment.

Boguslavskiy is related to Chepovetsky. The promissory note was secured by a mortgage on plaintiffs' residence in Old Bridge and Chepovetsky's personal guaranty.

After remitting four monthly installments, Boguslavskiy defaulted and made no subsequent payments. Civello alleged that Boguslavskiy sold cars without charging sales tax, kept the proceeds for the cars that were sold without reimbursing defendant, and abandoned Bayview. The transaction never closed, and Civello ultimately sold Bayview to someone else.

The 2008 Litigation

On July 18, 2008, Civello and Bayview filed suit against Boguslavskiy, Chepovetsky, and others in the Chancery Division (Docket No. C-28-08).[1] Civello's amended complaint alleged breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, interference with business relationships, breach of fiduciary duty, conversion, fraud, false representation, duty to indemnify, unconditional guarantee (as to Chepovetsky), and forgery (as to Chepovetsky). Civello sought compensatory and consequential damages, punitive damages, interest, an injunction, an

---

[1] Nashtatik was not named as a defendant in the 2008 litigation.

A-0476-21

accounting, attorney's fees, and costs. The complaint did not mention or seek to foreclose the mortgage. That action was consolidated into a Law Division action (Docket No. L-707-09) involving a separate suit by E-LOAN Inc. against Boguslavskiy, Bayview, and others.[2] The outcome of the 2008 action is unclear, but it apparently did not result in a judgment.

Plaintiffs' 2011 Bankruptcy

In 2011, plaintiffs filed a joint voluntary Chapter Seven bankruptcy in the United States Bankruptcy Court for the District of New Jersey (Bankruptcy Court) (Case No. 11-18319-MBK). The bankruptcy schedules they filed included reference to Civello's civil suit but did not specifically reference the note, guaranty, or mortgage as obligations from which plaintiffs sought discharge. Civello was listed as an unsecured nonpriority creditor relating to his civil suit and acknowledges he received notice of the bankruptcy.

The bankruptcy trustee abandoned his interest in plaintiffs' residence rather than attempting to liquidate it for the benefit of creditors.[3] The debt

---

[2] Nashtatik was not named as a defendant in the 2009 litigation.

[3] The asset schedules filed by plaintiffs listed the value of their residence in Old Bridge at $579,500. The debt schedules listed three mortgages with a combined balance of $806,700.04 encumbering their residence. Boguslavskiy was listed as a codebtor on defendant's claim. In their Statement of Financial Affairs, plaintiffs listed defendant's civil suit. Trustee abandonment is a procedure in bankruptcy, on notice to creditors, whereby the trustee abandons

owed by Chepovetsky on the personal guaranty was not declared non-dischargeable by the Bankruptcy Court. On September 29, 2011, plaintiffs were granted a discharge in bankruptcy, which included Chepovetsky's obligation under the personal guaranty. Notice of the discharge was mailed by the Bankruptcy Court to Civello.

### Plaintiffs' Quiet Title Action and Civello's Counterclaim

On January 10, 2019, plaintiffs filed this action against Civello, seeking to quiet title on their residence, injunctive relief, and a declaratory judgment barring Civello from pursuing claims under the mortgage, promissory note, or guaranty. They alleged that the applicable six-year statute of limitations on enforcement of the mortgage had expired since the maturity date of the note and mortgage was February 22, 2012. Plaintiffs did not plead that Civello was barred by the bankruptcy discharge from seeking a money judgment against them, nor did they rely upon the bankruptcy discharge as a basis to quiet title.

Civello filed an answer generally denying the allegations of the complaint, asserting numerous affirmative defenses, and a counterclaim for breach of contract, unjust enrichment, quantum meruit, and breach of the

his or her interest in property of the estate "that is burdensome to the estate or that is of inconsequential value and benefit to the estate," 11 U.S.C. § 554(a), typically because its liquidation would not benefit creditors, considering the debtors' exemptions, the property's fair market value, the mortgages and unpaid realty taxes encumbering the property, and the estimated costs of sale.

covenant of good faith and fair dealing. Civello alleged that Chepovetsky breached the guaranty, Nashtatik was a third-party beneficiary of the guaranty, and plaintiffs owed the outstanding balance on the loan. He asked the court to "maintain[] the mortgage" and for a judgment on the guaranty.

On June 12, 2019, plaintiffs filed an answer to the counterclaim that denied the substantive allegations but asserted no affirmative defenses. Significantly, plaintiffs did not assert their bankruptcy discharge as an affirmative defense to the counterclaim.

Plaintiffs did not provide requested discovery and did not comply with two orders compelling them to provide discovery. On January 10, 2020, the court dismissed plaintiffs' complaint with prejudice due to their violation of the two discovery orders and the court's subsequent instructions.

On February 7, 2020, the court conducted a one-day bench trial on Civello's counterclaim. Plaintiffs did not attend the trial or participate in the pretrial information exchange. Counsel for Chepovetsky attended the trial and cross-examined Civello's witnesses. Counsel indicated Chepovetsky was unavailable to attend because he was out of the country.

Civello testified on his own behalf. He described the transaction consistent with the documentation in the record. Civello testified that Boguslavskiy sold vehicles from Bayview's inventory and paid the proceeds to

6

himself and plaintiffs before abandoning the dealership in the summer of 2007. During encounters in 2012 and April 2013, Chepovetsky assured Civello that he would pay the balance owed. Paul Tortora, who observed the 2013 encounter, testified that Chepovetsky told Civello that he would pay the debt owed. The note, mortgage, guaranty, stock purchase agreement, and copies of checks were admitted into evidence. Plaintiffs did not produce any witnesses.

Plaintiffs' counsel did not mention plaintiffs' bankruptcy discharge during the trial. He did ask questions regarding Boguslavskiy's own bankruptcy.

On June 24, 2021, the court issued a written opinion finding that Civello proved his counterclaims of breach of contract, unjust enrichment, and breach of the covenant of good faith and fair dealing. The court found that plaintiffs waived and were "estopped from asserting" the affirmative defenses of the statute of limitations, the entire controversy doctrine, and "any other affirmative defense that could have been pled in the [a]nswer to the [c]ounterclaim."

The court found Civello could proceed to enforce the note against Boguslavskiy and the guaranty against Chepovetsky, but rejected Civello's liability claims against Nashtatik, noting she was "a mortgagor and not a guarantor." The court found "the mortgage is simply a security agreement and

not a guaranty of payment." The court entered judgment against Chepovetsky on the guaranty, in the amount of $410,800 (comprised of $184,000 principal, $216,000 interest through the maturity date, and late fees of $10,800), plus additional interest from February 12, 2012 to the date of the judgment, and counsel fees in an amount to be determined. The court did not enter judgment against Nashtatik. The judgment did not grant any relief under the mortgage.

Plaintiffs' Motion to Vacate the Judgment and the Order Dismissing the Quiet Title Action

On July 29, 2021, plaintiffs filed a motion to: (1) vacate the judgment alleging it was void due to their 2011 bankruptcy discharge; and (2) vacate the dismissal of their complaint to quiet title.[4] The motion papers included plaintiffs' bankruptcy filings, which demonstrated that the claims related to Chepovetsky's guaranty and defendant's 2008 civil action were discharged in bankruptcy.

The court heard oral argument on August 27, 2021. Plaintiffs emphasized that the judgment was void due to their 2011 bankruptcy discharge. They argued that any challenge to the discharge in bankruptcy of the debt owed on the guaranty must be brought in Bankruptcy Court rather than Superior Court, and the time to do so had expired. Plaintiffs emphasized

_____

[4] The motion papers did not cite a particular court rule but used language from Rule 4:50-1.

8

that the Civello's claim was for personal liability under the guaranty and not a suit on the mortgage, as there was no prayer for foreclosure.

Regarding their action to quiet title, plaintiffs argued that New Jersey does not permit clouds on title arising from a discharged debt, citing N.J.S.A. 2A:16-49.1. They further argued that the maturity date of the mortgage was in February 2012 and an action to foreclose the mortgage was subject to the six-year statute of limitations imposed by N.J.S.A. 2A:50-56.1, rendering the mortgage lien unenforceable. Therefore, their action to quiet title should be allowed to proceed. Plaintiffs also contended that the order dismissing their action for failure to provide discovery was void because they were not required to respond to defendant's discovery demands related to a debt discharged in bankruptcy, citing 11 U.S.C. § 524.

Defendant opposed the motion, relying on equitable principles, including unclean hands, and asserting that plaintiffs failed to prove that Chepovetsky's liability on the guaranty was included in their discharge in bankruptcy.

On September 3, 2021, the court issued an order and written opinion vacating the June 24, 2021 judgment and the January 10, 2020 order that dismissed the quiet title action. The court found the judgment was void because Chepovetsky's "personal debt" to defendant was discharged in bankruptcy pursuant to 11 U.S.C. § 524. The court noted that the debt was

9

listed in the bankruptcy schedules, which included reference to the 2008 lawsuit, and that Civello was given notice of the bankruptcy proceedings. The court stated it was unaware of the discharge in bankruptcy when the judgment was entered against Chepovetsky personally.

The court noted that pursuant to N.J.S.A. 2A:16-49.1, a judgment must be vacated "if it is a year after the debtor obtained a bankruptcy discharge of the debt upon which the judgment is based." Because Chepovetsky's 2011 discharge "included the debt upon which this action" and the prior action brought by Civello are based, the court determined that the judgment based on the guaranty of the note was void ab initio. The court held that the effect of a discharge in bankruptcy is not waived by the failure to plead it as a defense. Accordingly, the court concluded that the judgment was based on a debt discharged in bankruptcy, the judgment itself was void, consistent with Rule 4:50-1(d).

As to Chepovetsky's application to vacate the order dismissing his action to quiet title, the court found that the order was "improvidently entered" and the complaint should be reinstated. The court found that the mortgage held by Civello was due in full on February 22, 2012, and that N.J.S.A. 2A:50-56.1 imposed a six-year statute of limitations on enforcing the mortgage. Civello thus failed to institute a timely action on the mortgage and its enforcement was

barred, such that the mortgage "presents a cloud on the title" and an action to quiet title was appropriate.

The court also reasoned that the purported discovery failures which served as the basis for the dismissal arose from defendant's counterclaim on the discharged debt. The court wrote that, pursuant to 11 U.S.C. § 524, plaintiffs were "not obligated to do anything" as to these claims and were "entitled to disregard any such discovery that was part of an attempt to collect [] a discharged 'debt.'" This appeal followed.

Chepovetsky's Bankruptcy Court Motion

While this appeal was pending, Chepovetsky moved in Bankruptcy Court to reopen the bankruptcy case under 11 U.S.C. § 350 and to hold Civello and his attorney in contempt for violating the discharge injunction imposed pursuant to 11 U.S.C. § 524 by attempting to enforce the judgment on the counterclaim through the prosecution of this appeal. The Bankruptcy Judge issued an oral decision and order denying the motion.

In his oral decision, the judge assumed that Civello had proper notice of the bankruptcy filing and the debtor's discharge. The judge noted that notice was mailed to Civello's business and home address and served upon his attorney. The judge indicated that the motion presented two issues: (1) "whether or not pursuit of the counterclaim against the debtor in state court

11

constituted a violation of the discharge injunction"; and (2) "if there was a violation of the discharge injunction whether a finding of contempt is appropriate along with damages given the circumstances."

The judge noted "that after Civello filed his counterclaim, the debtor did not identify, reference or mention the bankruptcy discharge." Nor did he raise it as an affirmative defense or advise the state court of the bankruptcy discharge "at any point during discovery, motion practice or trial." The debtor first raised the bankruptcy discharge in state court after judgment was issued in favor of Civello. The judge recognized that "outside of bankruptcy this would give rise to an assertion that there's been a waiver of the discharge as an affirmative defense," citing Rule 4:5-4. After discussing cases pertaining to waiver of an affirmative defense and estoppel from relying on an affirmative defense, the judge explained "that the Bankruptcy Code overrides state court rules and, indeed, the state court case law on this issue [is] that 11 U.S.C. [§] 524(a)(2) provides that the discharge is essentially self-executing and is not waivable."

The judge noted that In re Hamilton, 286 B.R. 291 (Bankr. D.N.J. 2002) and In re Hensler, 248 B.R. 488 (Bankr. D.N.J. 2000) "stand for the proposition that Section 524 of the Bankruptcy Code operates as an automatic injunction against attempts to collect any discharged debts." "[B]oth courts

12

concluded that Section 524 obviates the need for a debtor to actively assert the discharge to render any subsequent actions in violation of the discharge and that [this] line of cases suggest[s] that the debtor in this case was under no obligation to assert his bankruptcy discharge as an affirmative defense in the state court action."

The judge was not convinced that "the debtors' decision to remain quiet about the discharge and sit on his hands" throughout the pretrial practice and trial of the counterclaim was irrelevant. The debtor "clearly [had] an opportunity to mitigate any harm" by raising the defense "to avoid the time, effort and money expended in pursuing the counterclaim."

The judge nevertheless found it was clear "that pursuing the counterclaim without more constituted a violation of the discharge injunction." The judge also recognized that a creditor has a right to pursue in rem relief under the mortgage, "which survives any bankruptcy discharge, and that it is necessary to fix the liability in order to effectively enforce the mortgage."

The judge then analyzed whether Civello's violation of the discharge injunction gave rise to a proper claim for a finding of contempt under 11 U.S.C. § 105(a). As we have noted, the judge declined to impose contempt sanctions. The judge was mindful of the Supreme Court's decision in Taggart v. Lorenzen, which permits the imposition of sanctions only where there is no

13

objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order. ___ U.S. ___, 139 S. Ct. 1795 (2019). The judge found that under the court rules and case law, there was "an objectively reasonable basis" for concluding that Civello's conduct "might be lawful[,]" even though "Civello's initial assertion of the counterclaim against the debtor individually was certainly a violation of the discharge injunction . . . ." Therefore, contempt sanctions were deemed "inappropriate." The judge further noted that to the extent the relief granted to Civello is "limited [to] in rem relief," it is "not violative of the discharge injunction." Therefore, "pursuit of litigation against the debtor to fix liability as a step towards bringing . . . in rem claims . . . such as . . . foreclosure do not violate the discharge injunction." The judge also denied the debtor's application to reopen the bankruptcy, finding there was "no impact" on the bankruptcy estate or any distributions to creditors. We granted Civello leave to appeal.

Defendant raises the following points for our consideration.

> POINT I
>
> WHEN A COURT RULE IS "NON-RELAXABLE, EVEN IN EXTENUATING CIRCUMSTANCES" AND THE SUPREME COURT SAYS "R. 4:50-1 CANNOT BE USED TO CIRCUMVENT THE TIME LIMITATIONS OF R. 4:49," IT IS REVERSIBLE ERROR TO VACATE A JUDGEMENT UNDER RULE 4:50 AFTER THE TIME UNDER RULE 4:49 EXPIRES AND WHEN BASED ON THE SAME

14

FACTS AVAILABLE PRIOR TO THE EXPIRATION OF TIME TO FILE UNDER <u>RULE</u> 4:49.

POINT II

WHEN A PARTY PROPERLY SEEKS RELIEF PURSUANT TO <u>RULE</u> 4:50, IT IS A RULE OF EQUITY THAT REQUIRES THE COURT TO CONSIDER EQUITY PRIOR TO AFFORDING A PARTY RELIEF; FURTHER, THE COURT FAILED TO MAKE THE REQUIRED FINDINGS OF FACT AND CONCLUSIONS OF LAW.

POINT III

THE COURT BELOW ERRED WHEN IT FAILED TO DIFFERENTIATE BETWEEN UPHOLDING THE JUDGMENT FOR PURPOSES OF THE MORTGAGE LIEN, WHICH IS EXEMPT FROM DISCHARGE IN BANKRUPTCY, AND VACATING THE JUDGMENT WHEN USED FOR PERSONAL LIABILITY OF THE DEBTOR, WHICH IS A CLAIM WE CEASED PURSUING UPON BEING INFORMED OF THE BANKRUPTCY.

POINT IV

NEW JERSEY'S JUDICIARY IS PERMITTED TO IMPLEMENT PROCEDURAL RULES THAT AFFECT FEDERAL RIGHTS, INCLUDING THE REQUIREMENT THAT CERTAIN DEFENSES BE TIMELY PLED AND/OR ACTED UPON, PROVIDED THE PROCEDURAL RULES ARE, AS HERE, REASONABLE.

This appeal involves the intersection of <u>Rule</u> 4:5-4, which requires responsive pleadings to "set forth specifically and separately," the affirmative defense of discharge in bankruptcy, and the federal statutory injunction against

15

prosecuting enforcement of a debt discharged in bankruptcy under 11 U.S.C. § 524. It also involves the issue of whether a creditor can bring a post-discharge action to fix the amount due on a mortgage on the debtor's residence through a judgment against the debtor who personally guaranteed payment of the loan.

Civello contends plaintiffs waived the affirmative defense of discharge in bankruptcy by failing to assert it in their answer to his counterclaim, during discovery, and during the trial. Plaintiffs contend that they were not required to plead discharge in bankruptcy as an affirmative defense to Civello's counterclaim and that under the Supremacy Clause, the federal statutory injunction against prosecuting discharged debts in state court trumps Rule 4:5-4 and renders the judgment on the counterclaim void ab initio.

Our analysis is informed by the case law interpreting Rule 4:5-4 and longstanding bankruptcy law principles, which appear to be in conflict in certain respects. We are also mindful of the Supremacy Clause of the United States Constitution, which provides:

> This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding.

> [U.S. Const., art. VI, cl. 2.]

A-0476-21

Under the Supremacy Clause, "state laws that 'interfere with, or are contrary to the laws of congress, made in pursuance of the constitution' are invalid." Puglia v. Elk Pipeline, Inc., 226 N.J. 258, 274 (2016) (quoting Wis. Pub. Intervenor v. Mortier, 501 U.S. 597, 604 (1991)).  The Supremacy Clause "unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail." Gonzales v. Raich, 545 U.S. 1, 29 (2005).

We first address whether the failure to plead the affirmative defense of discharge in bankruptcy results in a waiver of that defense under Rule 4:5-4. "While the rule does not expressly so state, it is clear that ordinarily an affirmative defense that is not pleaded or otherwise timely raised is deemed to have been waived." Pressler & Verniero, Current N.J. Court Rules, cmt. 1.2.1 on R. 4:5-4 (2022).  The requirement to plead "affirmative defenses may be relaxed when its enforcement 'would be inconsistent with substantial justice.'" Id., cmt. 1.2.3 on R. 4:5-4 (quoting Douglas v. Harris, 35 N.J. 270, 281 (1961)).  "[I]n certain factual situations, untimely raised defenses may be asserted in 'the interests of justice' provided there is no 'surprise or prejudice.'" Rivera v. Gerner, 89 N.J. 526, 538 (1982) (quoting O'Connor v. Altus, 67 N.J. 106, 116 (1975)).  However, "absent an overriding demand of substantial justice, an affirmative defense, once waived, is not subject to revival by post-trial, post-judgment motions." Pressler & Verniero, cmt. 1.2.1 on R. 4:5-4; see

17

also Lahue v. Pio Costa, 263 N.J. Super. 575, 597-98 (App. Div. 1993) (noting that an affirmative defense must be raised timely and attempting to raise it in a motion for reconsideration was not timely).

Section 524(a) of the Bankruptcy Code sets forth the effect of a discharge in bankruptcy. It provides that a discharge under Title 11:

> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1192, 1228, or 1328 of this title, whether or not discharge of such debt is waived; [and]

> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived;

> [11 U.S.C. § 524(a).]

The following facts are uncontroverted. Plaintiffs filed a joint Chapter Seven bankruptcy. The bankruptcy trustee abandoned his interest in plaintiffs' residence. Plaintiffs received a discharge in bankruptcy. The discharge included Chepovetsky's personal liability on the guaranty of payment of the loan that Boguslavskiy owed to Civello.

Civello and his business received notice from the bankruptcy court that plaintiffs filed the bankruptcy and received a discharge in bankruptcy. Despite

18

that notice, when plaintiffs filed this quiet title action, Civello filed a counterclaim against plaintiffs and pursued that claim to judgment, in clear violation of 11 U.S.C. § 524(a). Although Civello now claims that the judgment was merely to be used to fix the amount due in a subsequent foreclosure action, in addition to seeking a declaratory judgment, each count of Civello's counterclaim demanded judgment "for damages including but not limited to compensatory damages, interest, attorney's fees and costs."

On the other hand, despite the opportunity to do so, plaintiffs inexplicably failed to plead the affirmative defense of discharge in bankruptcy in their answer to the counterclaim. They likewise failed to raise that affirmative defense during discovery, pretrial motion practice, or the trial. Instead, they first raised the defense in their post-judgment motion to vacate the judgment entered against Chepovetsky and the order dismissing their quiet title action.

Under the Supremacy Clause, the nature, extent, and enforceability of a discharge in bankruptcy is controlled by the Bankruptcy Code and interpretative federal case law. "Section 524 of the Bankruptcy Code makes it entirely unnecessary for a debtor to do anything at all in a post-discharge collection action." Hensler, 248 B.R. at 491; accord Hamilton, 286 B.R. at 293 ("Section 524(a)(1) operates automatically, obviating any need for the debtor

19

to assert the discharge to render any subsequent actions on the judgment void."). "[T]he debtors were not required to assert the discharge or otherwise object to the continued prosecution of the discharged claim in the subsequent action." Hensler, 248 B.R. at 492. Consequently, the failure to plead the discharge in bankruptcy as an affirmative defense did not waive that defense or estop plaintiffs from asserting it. A state court judgment holding a debtor personally liable on a discharged debt "is void ab initio as a matter of federal statute." Ibid.

Civello also argues that the bankruptcy discharge does not preclude him from pursuing personal liability on the guaranty because the note, mortgage, and guaranty were not referenced in the debt schedules filed by plaintiffs in their bankruptcy. However, as we have noted, Civello was listed as a creditor and received notice of the bankruptcy and the bankruptcy discharge.

In addition, we take judicial notice, pursuant to N.J.R.E. 201(b)(4), that plaintiffs' Chapter Seven bankruptcy was determined to be a no-asset, no-bar date case. The trustee abandoned his interest in the debtor's residence because there was no equity in the property allowing for costs of sale, secured creditors, and exemptions, and filed a Chapter Seven Trustee's Report of No Distribution. As a result, creditors were advised in the initial notice of the bankruptcy filing to not file a proof of claim unless they received a notice to

20

do so.[5]   In a Chapter Seven, "no-asset, no-bar date case, dischargeability is unaffected by scheduling."   Judd v. Wolfe, 78 F.3d 110, 111 (3d Cir. 1996). This is because "[i]n a case where there are no assets to distribute . . . [a]n omitted creditor who would not have received anything even if he had been originally scheduled, has not been harmed by omission from the bankrupt's schedules and the lack of notice to file a proof of claim." Id. at 115.   Thus, any purported lack of specificity in plaintiffs' debt schedules did not impair their discharge from any personal liability on the guaranty.[6]

Independent of the Supremacy Clause, N.J.S.A. 2A:16-49.1 permits a bankruptcy debtor who obtains a discharge in bankruptcy to apply "to the court

---

[5]   In no-asset cases, creditors are advised by the Bankruptcy Court not to file proofs of claim absent subsequent notice to do so because previously undisclosed assets are discovered.   See Bankruptcy Rule 2002(e) ("In a Chapter [Seven] liquidation case, if it appears from the schedules that there are no assets from which a dividend can be paid, the notice of the meeting of creditors may include a statement to that effect; that it is unnecessary to file claims; and that if sufficient assets become available for the payment of a dividend, further notice will be given for the filing of claims.").

[6]   In so ruling, we are mindful of our Supreme Court's decision in Gaskill v. Citi Mortg, Inc., 221 N.J. 501 (2015).   As noted by the Court, Gaskill is distinguishable from Judd as Gaskill dealt with the failure to give notice of the bankruptcy filing and discharge to a creditor holding a judgment lien that impaired the creditor's ability to enforce its lien during the year following the bankruptcy discharge under N.J.S.A. 2A:16-49.1.   Gaskill, 221 N.J. at 506.   In contrast, we hold that lack of notice in a no-asset bankruptcy does not affect the discharge of personal liability.   We discuss post-discharge enforceability of in rem liens infra.

in which a judgment was rendered against him, . . . for an order directing the judgment to be cancelled and discharged of record." N.J.S.A. 2A:16-49.1 is "an ancillary remedy for discharge of judgments, within the state court system, to assure that judgments intended to be discharged under federal bankruptcy law would not continue to remain on record, thereby requiring payment at some time in the future." Party Parrot, Inc. v. Birthdays & Holidays, Inc., 289 N.J. Super. 167, 173 (App. Div. 1996) (quoting In re Arevalo, 142 B.R. 111, 112 (Bankr. D.N.J. 1992)). The statute ensures that "judgments intended to be discharged under the federal bankruptcy law [do] not continue to cloud the marketability of title to property owned by the debtor." Assocs. Com. Corp. v. Langston, 236 N.J. Super. 236, 241 (App. Div. 1989). Here, personal liability on the guaranty was discharged in bankruptcy. Thus, plaintiffs were entitled to proceed under N.J.S.A. 2A:16-49.1 to cancel and discharge any judgment imposing personal liability under the guaranty and can do so in the future. Id. at 242 ("Neither the Bankruptcy Code nor N.J.S.A. 2A:16-49.1 impose any time limit on a debtor's application to discharge a judgment lien."). Failure to plead the affirmative defense of discharge in bankruptcy does not impact that statutory remedy.

More fundamentally, we conclude that enforcing the waiver of this affirmative defense under Rule 4:5-4 "would be inconsistent with substantial

justice." Douglas, 35 N.J. at 281. Here, Civello received notice of the bankruptcy filing and discharge in bankruptcy; it was not a surprise. See Rivera, 89 N.J. at 538 (explaining that untimely defenses cannot be asserted if they cause "surprise and prejudice"). He can hardly claim he suffered prejudice by the delay when he should not have sought to impose personal liability on the plaintiffs in the first place. Therefore, it was appropriate to relax the requirement to plead discharge in bankruptcy. Achieving substantial justice demands nothing less.

Civello's reliance on the Rooker-Feldman[7] doctrine is misplaced. Although the doctrine provides that federal district courts will not sit in direct review of the decisions of a state tribunal, it does not diminish, preclude, or limit application of the Supremacy Clause. The supremacy of federal law on the effect of a discharge in bankruptcy is clear and well-settled.

We next consider the impact of the discharge on the mortgage lien. A discharge in a Chapter Seven bankruptcy only discharges the personal liability incurred by the debtors, and the accompanying lien remains enforceable against the real property. Gaskill v. Citi Mortg., Inc., 428 N.J. Super. 234, 243 (App. Div. 2012), aff'd o.b., 221 N.J. 501 (2015); see also Foley, Inc. v. Fevco,

---

[7] Rooker v. Fid. Tr. Co., 263 U.S. 413 (1923); D.C. Ct. of Appeals v. Feldman, 460 U.S. 462 (1983).

Inc., 379 N.J. Super. 574, 583 (App. Div. 2005) ("[A]lthough a discharge in bankruptcy prohibits further in personam actions against the discharged debtor, it does not prohibit proceeding in rem against the debtor's property."); New Century Fin. Servs., Inc. v. Staples, 379 N.J. Super. 489, 494-97 (App. Div. 2005) (a discharge in bankruptcy has "no effect" on a lien on real property). Further, a valid pre-petition lien survives bankruptcy even if the obligation that was the basis for the lien is a dischargeable obligation. In re Dillard, 118 B.R. 89, 91 (Bankr. N.D. Ill. 1990). A discharge extinguishes only the "'personal liability of the debtor,' and the mortgage lien remains." In re Malone, 489 B.R. 275, 284 (Bankr. N.D. Ga. 2013).

Thus, a debtor's "Chapter Seven discharge does not deprive a mortgagee of its right to collect on its debt in rem." In re Scotto-DiClemente, 459 B.R. 558, 565 (Bankr. D.N.J. 2011). Stated another way, while a discharge in bankruptcy generally prohibits further in personam actions against the discharged debtor, it does not prohibit secured creditors from proceeding in rem against the debtor's property. Johnson v. Home State Bank, 501 U.S. 78, 82-83 (1991); Furnival Mach. Co. v. King, 142 N.J. Super. 251, 254 (App. Div. 1976).

For these reasons, the bankruptcy discharge did not preclude Civello from seeking to foreclose the mortgage or obtaining a judgment fixing the

amount of the mortgage lien for purposes of a future mortgage foreclosure action so long as the judgment imposed no personal monetary liability. That said, we express no opinion on whether a future action to foreclose the mortgage would be time-barred by the applicable statute of limitations. We vacate the trial court's ruling that foreclosure is time barred by the current version of N.J.S.A. 2A:50-56.1.[8] That issue shall be addressed by the trial court on remand.

Civello's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

In sum, we hold that despite the bankruptcy discharge, Civello was entitled to a judgment on his counterclaim fixing the amount of the mortgage

---

[8] We note that plaintiffs executed the mortgage in 2007. The statute of limitations in effect for residential mortgage foreclosures at that time was twenty years. See Sec. Nat'l Partners Ltd. P'ship v. Mahler, 336 N.J. Super. 101, 105-108 (App. Div. 2000). In 2009, the Legislature enacted 2A:50-56.1(a), L. 2009, c. 105, § 1, effective August 6, 2009, which codified Sec. Nat'l Partners by declaring that a residential foreclosure action must be commenced within six years of its maturity date, within thirty-six years of its recordation, or within twenty years from the date of default, whichever is earliest. Deutsche Bank Trust Co. as Trustee for Residential Accredit Loans, Inc. v. Weiner, 456 N.J. Super. 546, 547 (App. Div. 2018). The maturity date of the mortgage was February 22, 2012. The Legislature again amended N.J.S.A. 2A:50-56.1, effective April 29, 2019, to require mortgagees to file residential foreclosures within six years of the maturity date of the loan or the date of default, whichever is earlier. L. 2019, c. 67 § 1. The parties can litigate any alleged retroactivity of the amended version of N.J.S.A. 2A:50-56.1 on remand.

A-0476-21

lien on plaintiffs' residence. We further hold that the bankruptcy discharge precluded Civello from obtaining a judgment of personal liability against either plaintiff and that the failure to plead that affirmative defense did not waive that defense or the injunction imposed by 11 U.S.C. § 524(a). Accordingly, the judgment entered against Chepovetsky was properly vacated.

We vacate the court's ruling that foreclosure was time-barred by the six-year limitation period imposed by the 2019 amendment of N.J.S.A. 2A:50-56.1 and remand that issue for reconsideration.

We also remand for the entry of a corrected judgment fixing the amount of the mortgage lien at $410,800 as of February 12, 2012 (comprised of principal of $184,000, interest through February 12, 2012 of $216,000, and late charges of $10,800), that additional interest is due on the guaranty at the maximum contractual interest rate permitted by law from February 12, 2012 through June 24, 2021, and that attorney's fees and costs are likewise due in an amount to be determined by the court if Civello pursues same. The corrected judgment shall further state that the claims against Nashtatik on the guaranty are dismissed with prejudice as she was not a guarantor of the loan. Finally, the corrected judgment shall state that any personal liability of Chepovetsky on the guaranty was discharged in bankruptcy and no longer enforceable.

On remand, the court shall also readdress whether plaintiffs were entitled to a judgment quieting title to their residence based on the applicable statute of limitations for residential mortgage foreclosure actions, considering our ruling today and the dismissal of their complaint with prejudice for failure to provide discovery.

Affirmed in part, as modified, vacated in part, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0476-21